JACOB SIMS, Administrator of the Estate of J. H. RUS-
SELL, Deceased, *et al.*, Appellants, v. DAVID
GRAY, *et. al.*

**Fraudulent Conveyance:** STATUTE OF LIMITATIONS. A fraud in a
1 conveyance is discovered, within Code 2591, when the deed is
recorded, and action to set aside must be brought within five
years from such recording—GRANGER, Ch. J., and ROBINSON, J.,
*dissenting.*

SAME—TRUSTS. Such a conveyance does not create a trust in such
2 sense as to interfere with applying the statute of limitation.

Practice in Supreme Court: REMAND. Facts stated under which a
3 decree in equity will not be reversed for trifling error caused by
imperfect presentation below, and under which, instead, a partial
remand will be ordered.

*Appeal from Pottawattamie District Court.*—HON.
WALTER I. SMITH, Judge.

MONDAY, DECEMBER 17, 1894.

This is a suit in equity by which the plaintiffs seek
to subject certain real estate to the payment of two
judgments rendered in favor of J. H. Russell, deceased,
against the defendant, David Gray. It is claimed in
behalf of plaintiffs that said real estate was conveyed
to the defendants U. H. White and Jane White in fraud
of the rights of the said Russell and other creditors of
Gray. A claim is also made that said Gray has an
equitable interest in certain other real estate, the title
to which is in said White, which is held by White in
fraud of the creditors of said Gray. The substance of
the prayer of the petition is that all of said real estate,
or of the said Gray's interest therein, be subjected to
the payment of said judgments. There was a full hear-

ing on the merits, and the petition of the plaintiffs was dismissed.    Plaintiffs appeal.—*Affirmed.*

*Sims & Bainbridge* for appellants.

*Harl & McCabe* for appellees.

Rothrock, J.—I.    The principal claim of the plaintiffs arises upon the demand that a certain lot in the city of Council Bluffs be subjected to the payment of the Russell judgments.    This lot was originally owned by said David Gray.    On the twenty-ninth day of September, 1875, he executed a quitclaim deed of the property to the defendant, U. H. White.    At that time there was a two-story brick business building on the lot, the upper story of which was not entirely finished.    There was then a mortgage upon the property for two thousand dollars for purchase money.    There was also a second mortgage of two thousand dollars, and judgment had been rendered against Gray, which upon the face of the record amounted to over three thousand dollars.    In addition to this, there was a considerable amount of delinquent taxes upon the property.    At the time of the conveyance by quitclaim to White, Gray was also indebted to said J. H. Russell; and in the years 1877 and 1878 Russell recovered judgments against White for the amount due him.    Russell died in the year 1881.    The purchase money mortgage was foreclosed, and the property was sold on special execution, and a sheriff's sale certificate was issued in pursuance of the sale.    The property was not redeemed from the sale, and a sheriff's deed was made and executed to William Garner, who was the owner of the certificate when the time of redemption expired.    This deed was executed on the fifth day of March, 1877. Afterward, and in the year 1878, Garner executed a special warranty deed for the premises to the defend-

ant, Jane White, who is the wife of the defendant, U. H. White; and on the same day a quitclaim deed was executed by U. H. White to said Jane White. The legal title to the property was thus vested in Jane White. All of these deeds were duly recorded soon after they were executed, and, so far as appears from the record of the deeds and the proceedings in foreclosure, the absolute title was held by Jane White. The attack made upon these transfers of title is based upon the claims that they were all in fraud of the creditors of David Gray. An examination of the evidence so far as it involves the validity of the conveyance by quitclaim from Gray to White, fully sustains the claims made in the petition that the conveyance was fraudulent. That fact is not really disputed by the defendants, but it is claimed in their behalf that the suit is barred by the statute of limitations, because it was not brought within five years after the fraudulent conveyance was executed and recorded. This action was commenced in the year 1890, nearly fifteen years after the conveyance of the legal title of the property to White, and twelve or thirteen years after Russell recovered the judgments upon which the suit is founded. Under section 2529 of the Code, "for relief on the ground of fraud in cases heretofore solely cognizable in a court of chancery" may be brought within five years "after their causes accrue;" and it is provided in section 2530 that the cause of action does not accrue in such cases "until the fraud ✳ ✳ ✳ ✳ shall have been discovered by the party aggrieved." It is claimed in behalf of appellants that the statute of limitations did not commence to run when the deed was recorded, because this is an action for relief on the ground of fraud in a case heretofore solely cognizable in a court of chancery, and the evidence shows that the fraud was not discovered until within five years pre-

ceding the commencement of the action. It was held
in *Laird v. Kilbourne*, 70 Iowa, 83, which was a creditor's
bill to set aside a fraudulent conveyance, that the stat-
ute of limitations commenced to run when the fraudu-
lent deed was filed for record, and that the law is that
"plaintiff discovered the fraud when she had notice of
the deed." This case was followed in *Hawley v. Page*, 77
Iowa, 239. It is true that in the last-named case the
question of actual notice is discussed, but it is distinctly
stated in the opinion that the rule in *Laird v. Kilbourne*
is correct as applied to the facts in that case. It is use-
less to further consider this question. It may not be
improper to say, however, that there is a very decided
preponderance of evidence that Russell, the judgment
plaintiff, had actual notice of such facts as to charge
him with knowledge of the fraudulent character of the
conveyance long prior to his death.

II. It is insisted, however, that the statute of
limitations cannot be invoked as a defense,
because the contract by which the conveyance
was made constituted a trust. It is true that there is
evidence in the case to the effect that White was to
hold the title and collect rents, and pay debts, and
eventually reconvey to Gray. But this fact is not at
all conclusive, especially when considered in connec-
tion with the title conveyed to Jane White. An ingen-
ious argument is made, based upon the claim that there
was a resulting trust in the property in favor of Gray.
It is true that the title of a fraudulent grantee in such
a case is in a certain sense held in trust for the credit-
ors of the fraudulent grantor. But whether such a
trust is capable of enforcement in equity after the bar
of the statute is altogether another question. An
ordinary creditors' bill is not founded upon the idea of
a resulting trust. It is based upon the ground that the

conveyance is void.   The general doctrine of trusts has
no application to such a case.   It is a well-understood
equitable principle that a conveyance made by a fraud-
ulent grantor cannot be impeached by the parties
thereto, either in law or equity, no matter whether the
fraudulent contract was an absolute conveyance or a
mere transfer of the property as a protection against
creditors.   In all such cases equity leaves the parties in
the position where they placed themselves.   In our
judgment, this is a plain case of fraudulent convey-
ance, void as to creditors, and there is no foundation in
either reason or authority for the claim that the trans-
action involves a trust which may be enforced, not-
withstanding the statute of limitations.   "The trust is
in reality one in name alone.   The creditors' right to
reach the debtor's property is in no true sense an inter-
est in the property.   It is at most an equitable lien on
that property."   Pom. Eq. Jur., section 1857, note 1.
That the statute of limitations cannot be avoided upon
the contention under consideration, see *Stone v. Brown*
(Ind. Sup.), 18 N. E. Rep. 392.   See, also, *Musselman v.
Kent*, 33 Ind. 452; Wait, Fraud, Conv., section 292.

III.   The claim made that Gray is the owner of
an equitable interest in certain other real estate is not
sustained by the evidence, and that part of the contro-
versy demands no further attention.   It appears from
the petition and an exhibit attached thereto that,
before this action was commenced, a suit was pending
in which Gray was plaintiff and U. H. White was
defendant, in which a large amount of money was
claimed on account.   The plaintiffs, in their petition,
incorporated a claim in this action for a lien on what-
ever was recovered by Gray against White in the other
action.   The defendant, U. H. White, in his answer,
averred that said claim was wholly fictitious, except as
to a few items procured at Gray's harness shop, and

consented that the court might decree that such sum, if any shall be found owing Gray, might be subjected to the judgments of the plaintiffs. It appears that no attention was given to this claim when the final decree was pronounced by the court, and it is now claimed that the decree of the court below should be reversed on this ground. The printed records and arguments on this appeal contain about two hundred and seventy-five pages. The whole costs of the appeal will aggregate nearly, if not quite, three hundred dollars. Not more than six or eight pages of abstract and arguments are devoted to this insignificant account. It is not stated in the argument of appellants what amount is claimed on the account. Under these peculiar circumstances, we are of the opinion that the claim on the account should be remanded to the court below, to ascertain the amount for which judgment should be rendered, and enter a judgment therefor. The whole controversy in the court below was as to the real estate, and from the record made it is quite probable that this account was not called to the attention of the court when the decision was made. This modification, or rather remanding, of this claim, is not intended as a reversal of the decree, but merely to correct what appears to us to have been overlooked. The decree as to the real estate will be affirmed, at plaintiff's costs.—*Affirmed.*

Robinson, J.—(Dissenting.)—I cannot agree with so much of the foregoing opinion as approves the rule announced in the case of *Laird v. Kilbourne*,—that the law holds that a person affected by a fraudulent deed discovers the fraud at the time the deed is recorded. It may be true that in most cases the recording of the deed, taken in connection with other relevant facts, will be sufficient to charge interested parties with

knowledge of the true character of the deed; but I do not think that should be held true in all cases. It was said in *Hawley v. Page* that the language of the opinion in the *Laird* case, considered abstractly, announces a broader rule than was intended, and, in my opinion, that should continue to be true. As the facts disclosed by the record in this case, including the recording of the deed, show that the plaintiffs should be charged with knowledge of the fraud in question for more than five years before this action was commenced, I agree to the result announced by the majority.

Granger, C. J.—I concur in the views expressed by Justice Robinson.